IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RESIDENTIAL WARRANTY SERVICES, INC., an Indiana corporation,<br><br>Plaintiff,<br><br>v.<br><br>GOYO MEDIA, LLC, a Utah limited liability company; CLEAR SATELLITE, INC., a Utah corporation; CLEAR HOME, INC., a Utah corporation; PAUL SOUTHAM, an individual; and CASEY HREINSON, an individual,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING IN PART MOTION FOR ATTORNEYS' FEES AND EXPENSES<br><br><br>Case No. 2:20-cv-00898-TC<br><br>Judge Tena Campbell |

Before the court is a motion for attorneys' fees and other expenses filed by Plaintiff Residential Warranty Services, Inc. (RWS). (ECF No. 102.) For the following reasons, the court grants that motion in part.

## BACKGROUND

In this action, RWS brought claims against Defendant Goyo Media, LLC (Goyo) for breach of contract, breach of the implied covenant of good faith and fair dealing, and account stated.[1] RWS also asserted that Defendants Clear Satellite, Inc. (Clear Satellite), Clear Home, Inc. (Clear Home), Paul Southam, and Casey Hreinson were liable for any amounts that Goyo owed RWS because these Defendants failed to maintain appropriate corporate formalities.

---

[1] RWS withdrew a claim for fraudulent transfer at trial.

1

In its Findings of Fact and Conclusions of Law (ECF No. 99), the court found that Goyo breached its contract with RWS and dismissed RWS's claims for breach of the implied covenant of good faith and fair dealing and account stated as moot. (Id. at 65–66.) The court also found that Clear Satellite and Clear Home were liable for the damages from Goyo's breach of contract under an alter ego theory of liability. (Id. at 65.) But the court rejected RWS's argument that Mr. Southam and Mr. Hreinson were personally liable. (Id.)

The court also found that RWS's requested damages were too high. Although RWS argued that Goyo owed $687,739 in outstanding invoices, the court found that the accurate amount of outstanding invoices was $536,385.63, a figure that appropriately reflected the parties' agreement to cap fees at $75,000 per month between June 2016 and May 2017. (Id. at 50–51.) The court further reduced the amount of damages to account for the value of a website and phone numbers that Goyo had transferred to RWS. (Id. at 51–52.)

The court awarded RWS $475,000 in damages and $306,993 in prejudgment interest, for a total judgment of $781,993 against Goyo, Clear Satellite, and Clear Home. (Id. at 66; Judgment, ECF No. 100.)

**LEGAL STANDARD**

RWS and Goyo entered into a Service and Marketing Agreement (the Agreement) on August 24, 2015. (Uncontroverted Fact 27; Agreement, Ex. 6.) The Agreement contained the following provision about governing law and fees:

> In the event of any dispute related, indirectly or directly, with this Agreement or the provisions or actions required hereunder, this Agreement shall be governed by and construed in accordance with the laws of Utah. Both Parties agree that the prevailing party may recover reasonable attorney's fees, court costs, and all other expenses, in addition to any other relief to which the prevailing Party may be entitled.

(Ex. 6 at 5.) Here, RWS is the prevailing party, as it won on its breach of contract claim and

2

successfully asserted an alter ego theory of liability against two of the Defendants. RWS is therefore entitled to "reasonable attorney's fees, court costs, and all other expenses …." (Id.)

Under Rule 54 of the Federal Rules of Civil Procedure, a motion for attorneys' fees must: 1) specify the judgment and the statute, rule, or other grounds entitling the movant to the award; 2) state the amount sought or provide a fair estimate of it; and 3) disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made. Fed. R. Civ. P. 54(d)(2)(B). Local Rule 54-1 further requires an affidavit identifying: 1) each person for whom fees are claimed and a summary of that person's relevant qualifications and experience; 2) a detailed description of the person's services rendered, the amount of time spent, and the hourly rate charged; and 3) any other pertinent supporting information that justifies the award. DUCivR 54-1(a)(2)(B)(iv).

Based on the governing law provision in the Agreement, the court applies Utah law when considering RWS's request for attorneys' fees. "Under Utah's reciprocal attorney fee statute, courts may award attorney fees to the prevailing party of a contract dispute so long as the contract provided for the award of attorney fees to at least one of the parties." Federated Cap. Corp. v. Shaw, 428 P.3d 12, 17 (Utah Ct. App. 2018) (cleaned up). Indeed, "such fees are awarded as a matter of legal right" where the contract provides for such an award. Saunders v. Sharp, 818 P.2d 574, 579 (Utah Ct. App. 1991) (cleaned up).

"The method for determining reasonable attorney fees has been well-established" in Utah case law. Burdick v. Horner Townsend & Kent, Inc., 345 P.3d 531, 549 (Utah 2015). Trial courts should consider the following four questions:

    1. What legal work was actually performed?

    2. How much of the work performed was reasonably necessary to adequately

3

prosecute the matter?

3. Is the attorney's billing rate consistent with the rates customarily changed in the locality for similar services?

4. Are there circumstances which require consideration of additional factors, including those listed in the Code of Professional Responsibility?

Id.

## ANALYSIS

RWS asks the court to award it $707,438.85 in attorneys' fees and $253,623.05 in other expenses.

RWS supports its request for attorneys' fees with a declaration from Steven A. Baldwin, one of the attorneys representing the Plaintiff. (See Decl. Steven A. Baldwin, ECF No. 102-1.) RWS argues that it has taken a conservative approach to estimating its attorneys' fees for two reasons. First, although there were 21 different staff members who billed on this matter, RWS is seeking to recover fees only for core team members, consisting of four attorneys,[2] one paralegal, and one litigation trial support professional. (Id. ¶ 6.) Second, RWS excluded any work that did not clearly relate to the prosecution of its breach of contract and alter ego claims. (Id. ¶ 9.) Together, these two approaches reduced the amount of fees sought by approximately $38,000. (Id. ¶¶ 6, 9.) Mr. Baldwin notes that RWS has paid all fees other than the cost of preparing the fee petition, $23,097.35, which has yet to be billed. (Id. ¶¶ 3, 13.) RWS now seeks to recover $707,438.85 of those fees. RWS includes a 36-page breakdown of the work performed in this matter, including the date, the name of the professional, the professional's work rate, the hours

---

[2] The biographies for these four attorneys are attached to RWS's motion for attorneys' fees. (Attorney Biographies, ECF No. 102-2.)

spent, and a narrative of the work performed.  (Time Detail Information, ECF No. 102-3.)

RWS supports its request for expert fees with invoices from FTI Consulting, which reflect the cost of the expert report prepared by Jeremy McGannon.  (FTI Invoices, ECF No. 102-4.)  RWS relied on this report as evidence that Clear Satellite and Clear Home did not observe appropriate corporate formalities.  Finally, RWS has attached biographies for the professionals from FTI Consulting who worked on the report and who billed at a blended rate of $395.  (Id.; FTI Biographies, ECF No. 102-5.)  RWS seeks an award of $253,623.05 for the cost of the expert report.

The Defendants object to these attorneys' fees and expert expenses for the reasons stated below.

### A. What Legal Work Was Actually Performed?

RWS maintains that the cited attorneys' fees are reasonable because this matter was complex, involving multiple parties and claims, extensive written discovery, eight depositions, mediation, dispositive motion practice, and a two-day bench trial followed by post-trial briefing. (Baldwin Decl. ¶ 5.)

But the Defendants accuse of RWS of "block billing," which refers to "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks."  Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1554 n.15 (10th Cir. 1996).  While holding that district courts retain discretion to determine whether the use of block billing indicates an unreasonable claim, the Tenth Circuit has noted that "[t]his rather imprecise practice may be strong evidence that a claimed amount of fees is excessive." Flying J Inc. v. Comdata Network, Inc., 322 F. App'x

610, 617 (10th Cir. 2009).

The court finds no evidence that RWS inappropriately used block billing methods. The detailed summary of attorney billing hours itemizes the work performed by task, not by day, and breaks down those tasks into time increments that are measured by the tenth of the hour. (See ECF No. 102-3.) While RWS redacted some portions of the task descriptions, RWS's summary is sufficient for the court to determine the type of work performed and the amount of time each task required. The Defendants have not identified any specific charge which was unreasonable; they instead argue that "it is impossible to identify how much time was spent on each task …." (Defs.' Objs., ECF No. 103 at 6.) This assertion is not supported by the detailed records provided by RWS.

The Defendants focus their arguments more specifically on the invoices provided by FTI Consulting. But again, the court finds no evidence of block billing. Although the FTI Consulting invoices provide daily summaries, they also include itemized entries by task performed. It is true that the description of these tasks is less detailed than the summaries provided by RWS's attorneys, including such general activities as "internal discussions" and "call with counsel." (See ECF No. 102-4.) But these invoices support RWS's request for expert fees, not for reasonable attorneys' fees. And the Agreement signed by RWS and the Defendants specifies that the prevailing party may recover "reasonable attorney's fees, court costs, and all other expenses …." (Ex. 6 (emphasis added).)

The court agrees with RWS that the Agreement's allowance for "all other expenses" includes expert fees. See, e.g., Great Earth Int'l Franchising Corp. v. Milks Dev., Inc., 2004 WL 2049268, at *3 n.3, *4 (S.D.N.Y. Sept. 13, 2004) (awarding expert fees where the parties' contract provided for an award of "all other expenses incurred"); U.S. Home Corp. v. Settlers

Crossing, LLC, 2019 WL 1317548, at *8 (D. Md. Mar. 22, 2019) (awarding expert fees because they were "expenses incurred in such litigation").

The court also agrees with RWS that the Agreement distinguishes between providing for "reasonable" attorneys' fees and "all" other expenses. Of course, under Utah law, "[a]n implied covenant of good faith and fair dealing inheres in every contract." Eggett v. Wasatch Energy Corp., 94 P.3d 193, 197 (Utah 2004). And "[w]here the contract allows discretion but does not provide any express standard for exercising that discretion, the covenant imposes an objective standard of reasonableness." Markham v. Bradley, 173 P.3d 865, 872 (Utah Ct. App. 2007). The court therefore reviews the expert fees cited for reasonableness. But the Agreement's allowance for "all" other expenses suggests that these expenses are presumptively reasonable unless the objecting party provides evidence to the contrary.

Here, the Defendants have cited no evidence to suggest that an expert report costing approximately $250,000 is objectively unreasonable. While Defendants' counsel may have billed less than this amount to their clients (see ECF No. 103 at 6 (citing $202,000 in attorneys' fees that Defendants' counsel billed to the Defendants)), the Defendants chose not to pay for their own expert report—presumably due to the expense of such a report.

Mr. McGannon's report relied on hundreds of pages of bank statements, profit-loss statements, and other accounting records. (See Exs. 91–139.) He was also required to prepare for and testify at trial. At a rate of $395 per hour, the requested expert fees amount to approximately 16 weeks of full-time work. Given the complexity of the issues presented, the court finds that this amount of work is not objectively unreasonable. And although the invoices provided by FTI Consulting are not as detailed as the summary provided by the attorneys about the work performed, these invoices nevertheless provide sufficient information for the court to

assess the reasonableness of the requested expert fees.

The court therefore finds that the evidence provided by RWS adequately explains the work that was performed both by the attorneys and by the experts at FTI Consulting.

### B. How Much of the Work Performed Was Reasonably Necessary to Adequately Prosecute the Matter?

RWS claims that its counsel has carefully reviewed the requested fees and determined that they are properly related to work required to prosecute the Plaintiff's claims in this matter. (Baldwin Decl. ¶¶ 3–13.)  Plaintiff's counsel also notes that "[t]he best evidence of reasonableness is the fact that Plaintiff already paid its attorneys' fees, with no guarantee of recovery."  (ECF No. 102 at 6.)

The Defendants argue that RWS's requested fees are not proportional to the needs of the case.  Specifically, the Defendants note that RWS only prevailed on one of three causes of action against Goyo and that the court found that only two of the other four named Defendants were liable under an alter ego theory.

The Defendants' assertion that RWS only prevailed on one of three causes of action against Goyo is a mischaracterization of the court's ruling.  The court did not reach the question of whether Goyo breached the implied covenant of good faith and fair dealing because the court found that Goyo breached the express terms of the contract:

> Because the court finds that Goyo breached the express terms of both the Agreement and the parties' oral modifications to that Agreement by failing to pay all amounts owed on outstanding invoices, the court does not need to consider whether Goyo also breached the implied covenant of good faith and fair dealing.

(ECF No. 99 at 53.)  Similarly, the court declined to reach RWS's account stated claim, finding that such a claim was a "different way of framing a breach of contract claim …."  (Id. at 53–54.) It is incorrect to suggest that RWS lost on these two causes of action.

It is true, however, that the court did not award RWS all the relief it requested. In additional to ruling against RWS on its theory that Mr. Southam and Mr. Hreinson should be held individually liable on a theory of alter ego liability, the court awarded RWS only $475,000 of its requested damages of $687,739. (Id. at 51.) As noted above, the court reduced the requested award for two reasons. First, the court found that the parties agreed to cap fees at $75,000 per month for a period of a year, and that RWS's accounting did not appropriately reflect this capped fee. (Id.) Second, the court made a downward adjustment to account for the value of a website and phone numbers that Goyo transferred to RWS. (Id. at 51–52.)

RWS's inaccurate accounting concerning the capped fees period created substantial additional complexity in this case, as did RWS's failure to provide the full record of invoices. Indeed, the court found as follows:

> Although the court does not make a finding that RWS acted in bad faith by failing to provide a full record of invoices, Mr. Thornberry's testimony was clear that, during the capped fees period, RWS waived fees over $75,000 "a few times" (Tr. 101 (Thornberry)), including one adjustment of approximately $11,000. (Tr. 55 (Thornberry).) Yet despite Mr. Thornberry's testimony, RWS has presented no evidence that it ever waived these fees. Instead, the record suggests that RWS was trying to walk back these waivers while hoping that nobody noticed.

(Id. at 52 n.27.)

Given the additional complexity that RWS's accounting created, the court finds that not all the work performed by RWS's attorneys was reasonably necessary to adequately prosecute the case. The court will therefore adjust RWS's requested fees according to the same ratio by which the court previously adjusted RWS's requested damages. The court awarded RWS $475,000 out of a requested damages award of $687,739, or 69%. Accordingly, the court awards RWS 69% of its requested attorneys' fees, or $488,606.

The court declines to make a similar adjustment to the amount that RWS requests for

9

expert fees. As discussed above, the Agreement allows the prevailing party to recover all expert fees, not just reasonable expert fees.

### C. Is the attorney's billing rate consistent with the rates customarily changed in the locality for similar services?

The Defendants argue that the billed rates requested by RWS are not reasonable for the Salt Lake City market. Specifically, the Defendants object to the hourly rate of $880 to $970 billed by John R. Maley, a partner in the Indianapolis office of Barnes & Thornburg LLP, the Plaintiff's law firm, noting that partners in the Salt Lake City office charged rates between $540 and $655. (ECF No. 103 at 6.) The Defendants assert that Mr. Maley's rates "are not reasonable or common in Salt Lake City." (Id.) But the Defendants do not cite the court to any Salt Lake City rates for an attorney with experience comparable to that of Mr. Maley, a trial attorney with over 35 years of experience. (Baldwin Decl. ¶ 11.)

In any event, Mr. Maley joined the litigation team shortly before trial to serve as lead trial counsel and only billed 8% of the total time. (Id. ¶ 12.) Over half the time billed was charged by Mr. Baldwin, who billed at rates between $395 and $520. (Id. ¶¶ 10, 12.) This court has previously upheld similar rates in the Salt Lake City market. See, e.g., Mrs. Fields Franchising, LLC v. MFGPC, Inc., No. 2:15-cv-00094-DAK, 2021 WL 5086377, at *8 (D. Utah Nov. 2, 2021) (finding billable rates of $465 and $500 per hour as appropriate market rates). The court therefore finds that the billing rates requested by RWS are reasonable and appropriate for market rates.

### D. Are there circumstances which require consideration of additional factors, including those listed in the Code of Professional Responsibility?

Having already adjusted RWS's requested attorneys' fees to account for the work that was reasonably necessary to prosecute the case, the court finds that there are no additional

10

factors that require consideration.

## ORDER

For the foregoing reasons, the court ORDERS as follows:

1. The Plaintiff's motion for attorneys' fees and other expenses (ECF No. 102) is GRANTED IN PART.

2. The court awards RWS $488,606 in reasonable attorneys' fees.

3. The court awards RWS $253,623.05 in other expenses.

DATED this 5th day of August, 2025.

BY THE COURT:

_____
Tena Campbell
United States District Judge